IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:08-CV-2257-M |
| METRO AUTOMATION, INC., JOHN M. CROSSNO and DAWN E. CROSSNO, | § § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Partial Summary Judgment [Docket Entry #26].[1] For the reasons explained below, the Motion is **GRANTED**.

I.   BACKGROUND AND PROCEDURAL HISTORY

This case arises out of cross-defaults on two secured lines of credit. On August 25, 2004, Plaintiff Wachovia Bank, National Association ("Wachovia"), extended a fixed-sum loan of $750,000 (the "Term Loan") to Defendant Metro Automation, Inc. ("Metro"), a manufacturer of specialized production equipment.[2] In return, Metro executed a promissory note (the "Term Note") for $750,000 in favor of Wachovia.[3] Pursuant to a separate security agreement, Wachovia also obtained a security interest in all personal property owned by Metro, specifically its equipment and inventory (the "Collateral"),[4] as well as a personal guaranty on the payment of all liabilities and obligations of Metro to Wachovia from Defendant John Crossno, Metro's

---

[1] Due to Wachovia's dismissal of its conversion claim [Docket Entry #46], this summary judgment motion is actually dispositive of all of Wachovia's claims.
[2] *See* Wachovia's Second Amended Complaint ("SAC"), Ex. 10.
[3] *See id.*, Ex. 11.
[4] *See id.*, Ex. 12.

owner.[5]

The Term Note contained a cross default clause stating that a default under any loan from Wachovia to Metro entitled Wachovia to declare default on the Term Note, and thereby accelerate the entire outstanding balance.[6] The Term Note also entitled Wachovia to recover its reasonable attorneys' fees and court costs in the event that Wachovia retained counsel to collect the Term Note.[7]

On June 11, 2007, Wachovia extended a second, revolving line of credit (the "Line Loan") to Metro, John Crossno and Dawn Crossno (the "Line Borrowers").[8] The Line Borrowers executed a promissory note in favor of Wachovia in the amount of $1.5 million (the "Line Note").[9] As security for the Line Loan, Metro executed four agreements granting Wachovia a security interest in the same Collateral that secured Wachovia's Term Note, as well as a security interest in certain other equipment.[10] In 2006, John Crossno also executed a personal guaranty on the Line Note (together with his guaranty on the Term Note, the "Crossno Guaranties"), which once again guaranteed the payment of all liabilities and obligations of Metro to Wachovia.[11]

The Line Note matured on July 31, 2008, at which time the Line Borrowers failed to pay all amounts due and owing under the Line Note. This constituted an event of default. Because the two Notes were cross defaulted, this also constituted an event of default under the Term Note.

On October 10, 2008, Wachovia sent a notice of default and demand letter to each of the

---

[5] *See id.*, Ex. 13.
[6] *See id.*, Ex. 11 at 1.
[7] *See id.* at 2.
[8] *See id.*, Ex. 1.
[9] *See id.*, Ex. 2.
[10] *See id.*, Exs. 3, 5, 7, 9. Wachovia perfected its security agreements on both Loans through UCC-1 filing statements. *See id.*, Exs. 4, 6.
[11] *See id.*, Ex. 8.

Line Borrowers, accelerating the Term Note and Line Note and demanding immediate payment of the outstanding balance on the two Notes. The Line Borrowers have not paid the outstanding balance on the Line Note, nor has Metro paid the outstanding balance on the Term Note. John Crossno has not paid the balance on either Note as a personal guarantor.

Wachovia now moves for summary judgment against the Defendants, jointly and severally, for the unpaid principal balances on both Notes, together with interest and charges, and for attorneys' fees. The Defendants do not contest their liability to Wachovia on the Notes and Crossno Guaranties; the sole issue in controversy centers around the actual amounts due and owing under the Notes.

## II. LEGAL STANDARD

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[12] A genuine issue of material fact exists when a reasonable jury could find for the non-moving party.[13] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[14] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[15] In determining whether genuine

---

[12] Fed. R. Civ. P. 56(c).
[13] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[15] *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant."[16]

### III.   ANALYSIS

A.  The Line and Term Notes

Texas law provides that a plaintiff seeking summary judgment in an action against the maker of a promissory note must establish: (1) the note in question; (2) that the defendant signed the note; (3) that the plaintiff is the present legal owner and holder of the note; and (4) that a certain balance is due and owing on the note.[17]

In this case, Wachovia has submitted a copy of each Note and a sworn affidavit from Andy Raine, Wachovia's Special Assets Manager for the Mid-South Region, and custodian of records for Wachovia with respect to the Notes.[18]  Raine swears in his affidavit that the photocopies are true and correct, that Metro and the Line Borrowers executed the Term Note and the Line Note, respectively, that Wachovia is the legal owner and holder of both Notes, and that there is a certain balance due on both Notes.[19]

The Defendants admit all of the elements of Wachovia's claim,[20] but assert the affirmative defenses of failure to mitigate, estoppel and waiver in arguing that Wachovia is not entitled to the full amount it claims under the Notes.

---

[16] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[17] *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) (quoting *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd)); *United States v. Lawrence*, 276 F.3d 183, 197 (5th Cir. 2001) (citing *FDIC v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1254 (5th Cir. 1993)); *see also Rabo Agrifinance, Inc. v. Veigel Farm Partners*, No. 2:05-CV-243, 2008 WL 341425, at *2-3 (N.D. Tex. Feb. 7, 2008).
[18] *See* Wachovia's Motion, Ex.1 at ¶¶ 2, 3.
[19] *See id.* at ¶¶ 5, 7; *see also Starkey*, 41 F.3d at 1023 ("A photocopy of a note, attached to a sworn affidavit declaring that the photocopy is a true and correct copy of the original, is considered valid summary judgment evidence in Texas." (citing *Life Ins. Co. v. Gar-dal, Inc.*, 570 S.W.2d 378, 380 (Tex. 1978)).  According to Raine's affidavit, Wachovia is the successor-by-merger to SouthTrust Bank, which is the lender named in the Notes. Defendants admit in their Answer that Wachovia is the legal owner and holder of both Notes.  *See* Answer to SAC at ¶¶ 12, 21.
[20] *See* Defendants' Answer at 2-5.

In support of these defenses, the Line Borrowers allege that Wachovia rejected Metro's offers to sell the Collateral for Wachovia's benefit,[21] and that Wachovia further refused to take possession of the Collateral in partial satisfaction of the Notes. The Line Borrowers contend that the Collateral had considerable value. By refusing to allow Metro to liquidate the Collateral, the Line Borrowers assert that Wachovia failed to mitigate its damages.[22] The Line Borrowers further assert that this decision with respect to the Collateral breached Wachovia's duties of good faith and fair dealing, such that Wachovia should be estopped from recovering the full value on the Notes.[23] Finally, the Line Borrowers interpret Wachovia's refusal to take possession of the Collateral as a waiver of its rights to collect on the Line Note.[24]

The Line Borrowers' argument that Wachovia failed to mitigate its damages does not support a reduction in Wachovia's recovery. The security agreements show that Metro waived "any and all requirement that [Wachovia] sell or dispose of all or any part of the Collateral at any particular time, regardless of whether [Metro] has requested such sale or disposition."[25] The security agreements also state that Wachovia may inspect the Collateral and render it unusable or dispose of the Collateral on Metro's premises "at its option."[26] Furthermore, Metro expressly waived any requirement that Wachovia "foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against [Defendants] . . . prior to making demand upon, collecting from or taking action against" Metro.[27] Because Wachovia was not required to sell, or

---

[21] Pursuant to Section 9 9.315 of the Texas Business and Commerce Code, Metro could not sell its pledged equipment and inventory free and clear of Wachovia's liens without Wachovia's consent.
[22] *See* Defendants' Response at 8-9.
[23] *See id.* at 8.
[24] *See id.* at 9.
[25] Defendants' Response, App. at 117 (Security Agreement dated October 25, 2006); *id.* at 126 (Security Agreement dated June 11, 2007).
[26] *See id.* at 116-17, 125-26.
[27] Defendant's App. at 121.

consent to sell, the Collateral under the terms of its security agreements, its decision not to do so cannot be construed as a failure to mitigate its damages.

The Line Borrowers' estoppel argument fails to establish the elements of either equitable or quasi-estoppel. The Line Borrowers' passing reference to Wachovia's "implicit assurance" that it would "conduct itself in a commercially reasonable manner with respect to the collateral and in a manner consistent with Wachovia's duties of good faith and fair dealing" is not sufficient to constitute a false representation or concealment of a material fact,[28] nor does any special duty exist between a secured lender and a borrower such that the lender owes the borrower a duty of good faith and fair dealing.[29] Furthermore, the Line Borrowers do not support with any evidence their bald statement that they "relied upon Wachovia's duties and assurances in this regard to their detriment."[30] Finally, as is apparent from the security agreements, Wachovia's present position is not inconsistent with any earlier position held by Wachovia.[31]

As for the Line Borrowers' waiver defense, it cannot stand. Waiver is an affirmative defense which can be asserted only against "a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right."[32] The chief element in a

---

[28] *See* Response at 8; *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998) (elements of promissory stoppel include false representation or concealment of material fact, as well as a reasonable and substantial reliance by the defendant).

[29] *See, e.g., Cockrell v. Rep. Mortg. Ins. Co.*, 817 S.W.2d 106, 116 (Tex. App.—Dallas 1991, no writ); *cf. FDIC v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) (holding that a secured creditor did not owe guarantors of a secured note a duty of good faith and fair dealing to foreclose promptly after default).

[30] *See* Response at 8; *Johnson & Higgins*, 962 S.W.2d at 515-16.

[31] *See Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) ("Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." (citation omitted)).

[32] *See FDIC v. Neubauer*, 2007 U.S. Dist. LEXIS 60583, at *7 (N.D. Tex. Aug. 17, 2007) (Lynn, J.) (quoting *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)).

claim of waiver is intent, which "must be clearly demonstrated by the surrounding facts and circumstances" for implied intent to be found.[33]

The record shows that Wachovia did not expressly waive any of its rights vis-à-vis Metro or the Line Borrowers, nor can such an intent be implied from its actions, which included sending an agent to inspect the Collateral. Wachovia's remedies under the relevant Notes and security agreements were cumulative and non-exclusive.[34] Metro expressly agreed that "[n]o failure on the part of [Wachovia] to exercise, and no delay in exercising, any right, power or remedy [under the security agreements] shall operate as a waiver thereof . . . ."[35] Furthermore, in the 2007 security agreement, the Line Borrowers waived and released their rights, demands, and defenses against Wachovia with respect to Wachovia's "promptness and diligence in collection of any of the Secured Obligations from the [Defendants]." [36]

Finally, the Court rejects the Defendants' contention that judgment for Wachovia's claims in the amounts asserted by Wachovia is inappropriate because Wachovia has "included nothing more than conclusory figures" and has "failed to provide any factual basis" for its stated damages.[37] Andy Raine's sworn affidavit is sufficient to establish the amounts due and owing to Wachovia. He has personal knowledge of the matters contained in his affidavit, and as Special Assets Manager and custodian of records for Wachovia, he is competent to testify regarding authenticated business records after reviewing them.[38]

---

[33] *Id.* (quoting *Days Inn Worldwide, Inc. v. Sonia Investments*, 2006 WL 3103912, at *13 (N.D. Tex. Nov. 2, 2006) (Fitzwater, J.)).
[34] Response, App. at 117, 126 (2006 and 2007 security agreements, respectively).
[35] *Id.*
[36] *Id.* at 121.
[37] Response at 7.
[38] *See* Motion, Ex. 1 at ¶¶ 2-4; Fed. R. Civ. P. 56(e)(1); *Duran III v. Citibank (South Dakota), N.A.*, No. 01-06-00636-CV, 2008 Tex. App. LEXIS 2060, at *7-8 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, no writ) (concluding that the affidavit of a bank's vice-president for credit services was not conclusory, where she had personal knowledge of the facts therein as a custodian of records, with control over the business record to which she testified); *Hudspeth v. Investor Collection Servs. LP*, 985 S.W.2d 477, 479 (Tex. App.—San Antonio 1998, reh.

B. The Crossno Guaranties

To recover on a guaranty, a plaintiff must show: (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying promissory note; (3) the default of the debtor under which liability is based; and (4) the guarantor's failure or refusal to perform the promise.[39]

Wachovia has submitted a copy of each Crossno Guaranty, which "absolutely and unconditionally" guarantees payment of Metro's debt to Wachovia, including but not limited to the amounts owed under the Term and Line Notes.[40] The Guaranties specifically state that they will "continue in full force until all indebtedness incurred or contracted" is completely paid and satisfied.[41] Defendants admit that the Line Borrowers defaulted on the Line Note, that Metro thereby defaulted on the Term Note, and that John Crossno has failed to perform his promises under the Crossno Guaranties. Summary judgment is therefore GRANTED for Wachovia on its claims on the Crossno Guaranties.

C. Attorneys' Fees and Costs

Wachovia moves to recover its reasonable attorneys' fees and court costs in connection with this litigation. Because the Term Note unambiguously entitles Wachovia to this relief, summary judgment is GRANTED for Wachovia on these claims.[42] On or before July 30, 2010, Wachovia shall submit proof of its attorneys' fees and costs.

---

overruled) ("A lender need not file detailed proof reflecting the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on the note is sufficient to sustain an award of summary judgment." (citation omitted)); *Am. 10-Minute Oil Change, Inc. v. Metro. Nat'l Bank—Farmers Branch*, 783 S.W.2d 598, 601 (Tex. App.—Dallas 1989, writ denied) (holding an affidavit made on the bank officer's personal knowledge, which identified the notes and guaranty, and designated the principal balance, to be sufficient to support summary judgment).

[39] *See, e.g., Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ) (citations omitted).
[40] *See* Wachovia's Motion, Exs. 8 and 13.
[41] *Id.*
[42] *See* SAC, Ex. 11 at 2.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. The Court will enter Final Judgment in a separate Order.

**SO ORDERED.**

July 16, 2010.

                                        **BARBARA M. G. LYNN**
                                        **UNITED STATES DISTRICT JUDGE**
                                        **NORTHERN DISTRICT OF TEXAS**